UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JOHN R. STOEBNER,                              Case No. 14-CV-0137 (PJS)

          Plaintiff,

v.                                             ORDER

PNY TECHNOLOGIES INC.,

          Defendant.

---

    Ralph V. Mitchell and John R. Stoebner, LAPP, LIBRA, THOMSON, STOEBNER & PUSCH, CHARTERED, for plaintiff.

    David J. Adler, McCARTER & ENGLISH, LLP; Robert T. Kugler, STINSON LEONARD STREET LLP, for defendant.

    Plaintiff John Stoebner is the trustee of the bankruptcy estates of Polaroid Corporation ("Polaroid") and its affiliated companies. *See In re Polaroid Corp.*, Case No. 08-46617 (Bankr. D. Minn. filed Dec. 18, 2008). Defendant PNY Technologies Inc. ("PNY") is a party to several contracts with Polaroid.[1] The trustee brought this adversary action against PNY seeking, among other things, royalties that PNY allegedly owes to Polaroid. *John R. Stoebner, Trustee, v. PNY Techs., Inc.*, No. ADV 10-4595 (Bankr. D. Minn. filed Dec. 16, 2010). The parties filed cross-motions for summary judgment on the trustee's claim for the royalties.

---

    [1]Where relevant, the Court's references to "Polaroid" are intended to encompass its affiliated companies and the Polaroid bankruptcy estates of which Stoebner is the trustee.

On December 30, 2013, Chief United States Bankruptcy Judge Gregory F. Kishel issued a Report and Recommendation ("R&R") recommending that the Court deny PNY's motion, grant in part the trustee's motion, and enter judgment in the amount of $361,233.33 in favor of the trustee. This matter is before the Court on PNY's objection to the R&R. The Court has conducted a de novo review. *See* 28 U.S.C. § 157(c)(1); Fed. R. Bankr. P. 9033(d). Based on that review, the Court adopts the R&R, except that it will not enter judgment until PNY's claim for setoff is finally determined.

PNY and Polaroid are parties to a 2006 Brand License Agreement ("License"), under which PNY agreed to pay royalties for the right to use Polaroid's trademarks. The trustee alleges that PNY failed to make royalty payments for the second, third, and fourth quarters of 2008 and for the first and second quarters of 2009, in the total amount of $472,946.93. This figure is derived in part from sales reports that PNY provided for 2008; because PNY did not provide sales reports for 2009, the trustee is seeking $100,000 per quarter, which is the minimum guaranteed royalty payment under the License. *See* Dolan Decl., May 10, 2011 ¶¶ 8-15 & Ex. A-1 § 4(a) (setting forth the minimum guaranteed royalty payments for each quarter).

PNY first argues that the trustee does not have the right to these royalties because Polaroid sold its rights under the License to a third party in May 2009. Specifically, PNY points to an Asset Purchase Agreement ("APA") under which

Polaroid sold its assets to PLR Holdings, LLC ("PLR") in a sale that was approved by the bankruptcy court in April 2009 and that closed on May 7, 2009. *See* Candee Decl., May 10, 2011 Ex. 1 [hereinafter "APA"]; Dolan Decl., May 10, 2011 ¶ 14. The trustee is seeking only the royalties that had accrued and were due to Polaroid as of the closing date. PNY contends that, because Polaroid assigned the License to PLR, the trustee no longer has the right to sue for those royalties.

The question, then, is one of contract interpretation: Did Polaroid, through the APA, assign its right to pre-sale royalties to PLR? Having reviewed the relevant contract language, the Court agrees with Judge Kishel's analysis of the APA. As Judge Kishel explained, the APA specifically carves out "royalties . . . due and owing under the Acquired Contracts and *accruing on or before the Closing Date*" as assets that are retained by Polaroid. APA § 1.2(p) (emphasis added).[3] This specific provision controls over the more general provisions that PNY cites, particularly as this specific provision says that it applies "[n]otwithstanding anything to the contrary in this Agreement . . . ." APA § 1.2; *see Fortune Funding, LLC v. Ceridian Corp.*, 368 F.3d 985, 990

---

[3]The record does not appear to contain Schedule 1.1(c), which lists the "Acquired Contracts," *see* APA § 1.1(c), but the parties do not dispute that the License is listed as an "Acquired Contract" on the schedule. *See* ECF No. 1-2 at 6 (PNY's memorandum in support of its motion for summary judgment referring to documents in the main bankruptcy case to show that the License is an "Acquired Contract").

(8th Cir. 2004) ("Under Minnesota law, if a conflict exists between two contract provisions, a contract's specific term controls over a general term.").[4]

PNY next objects that the Court should not enter judgment at this time because PNY has the right to set off its claim in the main bankruptcy proceeding against the trustee's claim in this adversary proceeding. In the main bankruptcy proceeding, PNY filed a claim for $686,837.57 arising out of a separate contract with Polaroid called the "Support Services Agreement" ("SSA"). In this adversary proceeding, PNY argues that it is entitled to set off its SSA claim in the bankruptcy proceeding against the trustee's claim for royalties. If PNY's full claim were allowed, PNY's claim under the SSA would wipe out the trustee's claim under the License. Judge Kishel agreed that PNY is entitled to set off its SSA claim against the trustee's claim for royalties, but in a separate order he reduced the amount of PNY's claim to $111,713.60, which results in a net judgment in favor of the trustee in this action. PNY's appeal of that separate order recently resulted in a remand for further discovery. *See PNY Techs. Inc. v. Polaroid Corp.*, No. 14-CV-0754 (JRT), ECF No. 25 (D. Minn. Mar. 19, 2015). The trustee agrees that this Court should defer the entry of judgment on the trustee's claim until the amount of PNY's setoff is finally determined, and the trustee's concession adequately resolves PNY's objection on this issue.

---

[4]The APA is construed under Minnesota law. APA § 10.4.

PNY also objects that it has not had any opportunity to take discovery. The proper method to raise such an objection is to file an affidavit under Fed. R. Civ. P. 56(d). *See* Fed. R. Bankr. P. 7056 (Fed. R. Civ. P. 56 is applicable in adversary proceedings). PNY did not file a Rule 56(d) affidavit, however. Nor has PNY identified any discovery that it could take that would be relevant in this proceeding.[5] For the most part, the issues discussed by PNY relate to the SSA claim that it has asserted in the bankruptcy proceeding. That claim relates to a completely separate contract, however, and has nothing to do with this case (except insofar as any amounts due to PNY under the SSA may be set off against the trustee's claim for royalties under the License).

PNY makes much of the fact that it did not get an opportunity to depose James Dolan, the former vice president and controller of Polaroid who submitted a declaration attesting to the amounts due under the License. But PNY does not explain why it needs to depose Dolan, whose calculations were based on PNY's own sales reports (which are attached to Dolan's declaration). PNY does not contend, for example, that Dolan's calculations are incorrect or that the sales reports attached to Dolan's declaration are not the actual sales reports that PNY submitted to Polaroid. PNY also complains that it was not permitted to depose Bradford Kullberg, another Polaroid employee, who authored

---

[5]PNY repeatedly says that it served discovery shortly after receiving the trustee's motion for summary judgment. PNY has not provided its discovery requests to the Court, however.

an email in which PNY is particularly interested. The discussion in the email concerns the parties' dispute under the SSA, however, and is therefore not relevant in this case.

As a last resort, PNY contends that it needs discovery to determine whether the License was actually assigned to PLR. This issue apparently arose somewhat belatedly in the bankruptcy court when, in response to PNY's motion for summary judgment, the trustee suggested that Polaroid may *not* have assigned the License to PLR after all. ECF No. 1-3 at 7. The trustee pointed to a letter agreement, dated April 16, 2009, under which Polaroid and PLR agreed that the License (and a few other contracts) would not be assigned at closing but would instead be subject to further negotiations between PLR and the counterparties to the specified contracts.[6] Candee Decl., May 26, 2011 Ex. 3. Accordingly, the trustee claimed that there were issues of fact concerning whether the License was ever assigned (although the trustee later submitted an email from counsel for a PLR affiliate confirming that the License had in fact been assigned to PLR ). *See* Stoebner Aff., June 20, 2011 & Ex. A.

PNY now argues that it needs discovery on the issue of whether Polaroid assigned the License to PLR. If Polaroid did *not* assign the License, PNY argues, then

---

[6]The letter agreement is actually between Polaroid and an entity entitled PLR Acquisition, LLC. In addition, and somewhat confusingly, the agreement describes PLR Acquisition, LLC as the buyer under the APA. As noted earlier, the APA is between Polaroid and PLR Holdings, LLC. Insofar as neither side has even mentioned this discrepancy (much less contended that it makes any difference), the Court follows the parties' lead and treats it as irrelevant.

the License was not included among the "Acquired Contracts" (that is, among the contracts assigned to PLR under the APA), and the carveout for royalties due under "Acquired Contracts" would not apply.  *See* APA § 1.2(p).  According to PNY, this raises the possibility that the royalties that it owed Polaroid under the License could be considered part of the receivables that *were* assigned to PLR under § 1.1(q) of the APA.

To avoid summary judgment on the ground that further discovery is necessary, the party resisting summary judgment must identify what facts it seeks and how those facts could reasonably be expected to create an issue of fact.  *Johnson v. United States*, 534 F.3d 958, 965 (8th Cir. 2008).  PNY does not identify any facts that it could discover that would raise a factual issue concerning whether Polaroid assigned the License to PLR.  This failure is particularly noteworthy because, as between PNY and the trustee, PNY is in the far better position to know whether Polaroid assigned the License to PLR.

As noted, under the April 16 letter agreement, whether any of the contracts at issue were ultimately assigned to PLR depended entirely on negotiations between PLR and the counterparties to those contracts.  In particular, if the counterparty to a contract failed to irrevocably waive certain rights under § 365 of the Bankruptcy Code within 90 days after closing, then that contract became an "Acquired Contract" that was assigned to PLR.

The counterparty to the License, of course, is *PNY*. For the License to remain with Polaroid, then, PNY would have had to irrevocably waive certain § 365 rights. PNY obviously does not need discovery to find out whether *it* waived *its* rights, which is the only fact that determines whether the License was assigned to PLR. Moreover, PNY has never suggested that it waived its § 365 rights. To the contrary, PNY contends that it needs discovery because, if the License was not assigned to PLR, then PNY has "significant rights under Section 365(n) of the Bankruptcy Code . . . ." ECF No. 3 at 7 n.5. These would seem to be the very rights that PNY would have had to waive in order to prevent the License from being assigned to PLR. *See* Candee Decl., May 26, 2011 Ex. 3. In any event, given PNY's failure to contend that it waived any § 365 rights (much less offer any evidence that it did so), the Court concludes that there is no real issue of material fact and that the License was assigned to PLR.

Finally, at the hearing before Judge Kishel, PNY contended that the APA required Polaroid to provide PLR a list of receivables that were being conveyed to PLR. ECF No. 2 at 36-37. PNY suggested that it needed to look at this document in order to determine whether, notwithstanding the language in the APA reserving pre-sale royalties to Polaroid, Polaroid nevertheless conveyed its right to those royalties to PLR. PNY does not seem to be pursuing this argument and did not cite the provision of the APA that requires such a list. (It appears to the Court that PNY is referring to

Polaroid's obligation under § 3.2 of the APA to convey the "Acquired Assets"—that is, the assets being sold under the APA—via the appropriate instruments at closing.) Under the plain language of the APA, however, the pre-sale royalties that accrued under the License are *not* "Acquired Assets." There is no reason to believe that Polaroid voluntarily gave away its pre-sale royalties to PLR in some other document despite the plain language in the APA reserving those royalties to Polaroid. The Court therefore overrules PNY's objection and adopts the R&R.

ORDER

Based on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The Court ADOPTS the December 30, 2013 Report and Recommendation of Chief United States Bankruptcy Judge Gregory F. Kishel, except that it will defer the entry of judgment at this time.

2. When a final determination as to PNY's claim in *In re Polaroid Corp.*, Case No. 08-46617 (Bankr. D. Minn. filed Dec. 18, 2008) is made, the parties must notify the Court and submit a proposed order for judgment.

Dated: April 23, 2015                  s/Patrick J. Schiltz
                                       Patrick J. Schiltz
                                       United States District Judge